# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS F. FORD, et al.,<br><br>Plaintiff,<br><br>v.<br><br>ADRIANA LAURA BONHOMME-CAHN, in her individual capacity and as executor of the Estate of Pete Carl Cahn,<br><br>Defendant. | Case No.: 3:16-cv-00460-L-WVG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Pending before the Court is Defendant Adriana Laura Bonhomme-Cahn's ("Defendant") motion for summary judgment. (MSJ [Doc. 29].) Pursuant to Civil Local Rule 7.1(d)(1), the Court decides the matter on the papers submitted and without oral argument. For the reasons stated below, the Court **GRANTS IN PART AND DENIES** Defendant's motion.

//
//
//
//
//

1

## I. BACKGROUND

This case arises out of the alleged looting of an ERISA governed Employee Welfare Benefit Plan (the "Plan") by Plan fiduciaries. In 1989, Pete Cahn, an accountant, created a company called the Association of Civil Employers ("ACE). ACE then established the Plan. To participate in the Plan, Adopting Employers signed Adoption Agreements (Docs. 29-3 Exs. E, J) and paid actuarially determined contributions into the fund on an annual basis. In consideration for these contributions, Employees of the Adopting Employers became Participants in the Plan. A Plan Document (Doc. 29-3 Ex. J), which was incorporated by reference into the Adoption Agreements, explains the benefits of participation. In short, participation entitles employees to defined benefits such as payments in the event of severance, disability, and death. (Plan Doc.) Participation does not entitle Adopting Employers to a residual interest in their contributions. (Id.)

In 1989, Plaintiffs Thomas F. Ford ("Ford"), Thomas F. Ford Inc. ("Ford"), and Ronald P. Hempel ("Hempel") (collectively, "Plaintiffs") signed Adoption Agreements and thereby became Adopting Employers. (Ford Adoption Agreement [Doc. 29-3 Ex. I]; Hempel Adoption Agreement [Doc. 29-3 Ex. E].) From 1989 until 1996, Plaintiffs made annual payments to the Plan. Ford claims to have contributed a total of $624,150 into the Plan. (Ford Decl. [Doc. 30-2] ¶ 8.) Hempel claims to have contributed a total of $367,013 into the Plan. (Hempel Decl. [Doc. 30-1] ¶8.) In addition to Ford and Hempel, at least eight other entities became Adopting Employers. (Doc. 30-26.) There are currently as many as sixty six additional Employees that may qualify for Plan benefits. (Ford. Decl. ¶ 23; Hempel Decl. ¶ 23.) Ford and Hempel's contributions appear to account for more than 96% of total Plan contributions. (Doc. 30-26.)

In February of 2015, Pete Cahn committed suicide. (JSUF [Doc. 31] 4.) Following Pete Cahn's suicide, Plaintiffs hired an attorney, who commissioned a forensic accountant. After reviewing Plan documents with the help of their attorney and forensic accountant, including documents provided by Defendant, Plaintiffs discovered evidence

suggesting that Defendant was appointed to a fiduciary role as a member of the Plan's Benefits Committee in 2001, a role she seemingly never resigned (Doc. 29-3 Ex. I.) Plaintiffs also discovered evidence suggesting that, whereas Pete Cahn and Defendant purported to be drawing only modest amounts of money from the fund for expenses (Doc. 30-25), Pete Cahn and Defendant were in fact withdrawing staggering amounts of money from the fund for expenses. (Docs. 30-12; 30-13.) Specifically, Plaintiffs allege that Defendant and Pete Cahn improperly siphoned around $1.4 million in funds from the Plan.

Accordingly, Plaintiffs, who became Plan fiduciaries after Pete Cahn's death, filed a First Amended Complaint against Defendant, both in her individual capacity and as executor of Pete Cahn's estate. (FAC [Doc. 14].) In the FAC, Plaintiffs allege that Defendant and Pete Cahn breached their fiduciary duties to the Plan in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. 1104. Defendant now moves for summary judgment as to all claims against her. (MSJ.) Plaintiffs oppose. (Opp'n [Doc. 30].)

## II.  LEGAL STANDARD

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party

3

failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322–23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

"[T]he district court may limit its review to the documents submitted for the purpose of summary judgment and those parts of the record specifically referenced therein." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001). Therefore, the court is not obligated "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (*citing Richards v. Combined Ins. Co. of Am.*, 55 F.3d 247, 251 (7th Cir. 1995). If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party meets this initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Elect. Indus. Co., Ltd. v Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the nonmoving party must "go beyond the pleadings" and by "the depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ P. 56(e)).

When making this determination, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita*, 475 U.S. at 587. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

//
//
//

## III. DISCUSSION

In her motion for summary judgment, Defendant argues (1) that Plaintiffs lack Article III standing; (2) that Plaintiffs' claims are barred by a three year statute of limitations and a six year statute of repose; and (3) that Plaintiffs are not entitled to individual recovery.[1] The Court will address these arguments in turn.

### A. Standing

The doctrine of standing is rooted in the "cases or controversies" requirement of Article III § 2, Cl. 1 of the U.S. Constitution. To establish standing, a plaintiff must demonstrate an injury in fact, that is fairly traceable to the challenged conduct of the defendant, and that is likely to be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 560, 560–561 (1992). Defendant presents several arguments to the effect that Plaintiffs lack standing because the alleged looting of the Plan did not cause them any harm.

First, Defendant argues that Hempel lacks standing because his retirement terminated his participation in the Plan—meaning a Plan default would not harm him because he is no longer entitled to Plan benefits. In support of this argument, Defendant cites to Hempel's Adoption Agreement. Hempel's Adoption Agreement states that "[a] participant shall terminate participation in the Plan on … the day he . . . terminates employment … whether by reason of retirement, disability, layoff, or otherwise…" (Hempel Adoption Agreement §6.) If this provision governs, Defendant's argument would be persuasive and Hempel would not have standing based on being a Plan Participant. However, there is some ambiguity as to whether the parties intended for retirement to terminate Plan participation.

---

[1] For the first time in her Reply, Defendant argues that the administrative costs and fees levied against the Plan assets were legitimate and Plaintiffs did not exercise due diligence. Because Defendant neglected to raise these arguments in her opening brief, Plaintiffs had no opportunity to respond. The Court therefore declines to consider these arguments. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief").

5

1  To wit, the Adoption Agreement incorporates the Plan Document by reference
2  (Hempel Adoption Agreement Premises I – III.) The Plan Doc.'s definition of
3  "Participant" appears inconsistent with the Adoption Agreement's provision that
4  retirement terminates participation. Specifically, the Plan Doc. defines a Participant as an
5  "Employee" or an employee's dependent. (Plan Doc. § 2.17.) Furthermore, the Plan
6  Doc. defines an Employee in a manner that includes a person "who has terminated
7  employment with the Adopting Employer by reason of retirement or disability on or after
8  the Effective Date." (Id. § 2.12(b).) Because Hempel terminated employment by reason
9  of retirement, he seems to trigger the Plan Doc.'s definition of "Employee", which in turn
10 triggers the Plan Doc's definition of "Participant." Thus, Hempel would appear to be a
11 "Participant" under the Plan Doc., but not under the Adoption Agreement. This
12 inconsistency between the two operative documents creates a triable issue as to whether
13 the parties, at time of contracting, intended that retirement terminate Plan participation.
14     Second, Defendant argues that Plaintiffs lack standing because the Plan cannot go
15 into default. The premises of this argument are (1) that all Participant's benefits are
16 capped at their unappreciated contribution amounts and (2) the Plan contains more than
17 enough funds to pay back all Participant's unappreciated contributions. The first premise
18 is based on a Frequently Asked Question ("FAQ") document allegedly sent out to
19 Plaintiffs at or around the time they signed their respective Adoption Agreements. (FAQ
20 [Doc. 29-3 Ex. F].) Two questions on the FAQ document read as follows:
21 Q.    How much generally can the employee get out of the ACE Welfare Benefit Trust?
22 A.    What you pay for is what you can get. (i.e. cash, investments, and insurance
23 coverage is generally the most that can be collected).
24 Q.    Can another employer [sic] claims affect my funds in the ACE Welfare Benefit:
25 [sic] Trust?
26 A.    Employers, by the adoption agreement and trust documents, are limited to the
27 monies put in and the insurance coverages bought with this money… (FAQ [Doc. 29-3
28 Ex. F].)

6

Defendant argues that these questions and answers establish that a Participant's benefits are capped at the amount of their contributions. The Court disagrees. The main problem with Defendant's argument is the lack of any evidence suggesting that the FAQ document is legally operative in the sense that it defines the parties' respective contractual rights under the Plan. It is true that Hempel and Ford both acknowledge having probably received the FAQ document around the time of contracting. (Ford Dep. [Doc. 29-3 Ex. B] 135; Hempel Dep. [Doc. 29-3 Ex. C] 26-27.) However, Defendant cites no evidence showing that either plaintiff agreed to any provisions of the FAQ Document. Rather, the evidence shows only that, in entering the contract, Plaintiffs agreed to the terms and conditions set forth in the Adoption Agreements and the Plan Document. Because Defendant fails to cite to any provision in the Plan Document or either Adoption Agreement that caps benefits at contribution levels, the Court finds, for purposes of this motion, that benefits are not thus capped.

From this finding, it follows that Plaintiffs have made a sufficient demonstration of standing to survive this motion for summary judgment. Indeed, the Plan's funding currently sits at only about $1.1 million. (JSUF 42.) It appears that the payment of a death benefit[2] to Ford could easily exhaust these funds and send the Plan into default such that both Ford and Hempel would receive less benefits than they could have received had Defendant and her late husband not (allegedly) looted $1.4 million dollars from the Plan. Even more so is there a likelihood of injury to Plaintiffs when considering that (1) Ford is entitled to more than just a death benefit; (2) Hempel may be a Plan Participant who is also entitled to full benefits under the Plan, and (3) Defendants have not submitted any evidence proving that the alleged sixty six other Plan Participants could not later come forward with valid claims

//

---

[2] The Plan Document provides for a death benefit of ten times previous year's earnings. (Plan Doc. Ex. A.) In 2016, Ford earned $200,000. (Ford. Decl.¶ 22.) 10 x $200,000 = $2,000,000 death benefit.

## B. Statutes of Limitations and Repose

An ERISA plaintiff alleging breach of fiduciary duty must bring his claims within three years of gaining actual knowledge of the breach, and within six years of the last date upon which an act or omission that constituted the breach occurred. 29 U.S.C. § 1113. The three-year restriction is the statute of limitations and the six year restriction is the statute of repose. *Moyle v. Liberty Mutual Ret. Benefit Plan*, 263 F. Supp. 3d 999, 1010 (S.D. Cal. 2017). "Actual knowledge" for purposes of the statute of limitations refers to knowledge of the actions that constituted breach. *Blanton v. Anzalone*, 760 F.2d 989, 992 (9th Cir. 1985). To trigger the statute of limitations period, it is not necessary that the plaintiff also be aware that the defendant's actions violated the law. *Id.*

Defendant contends that the statute of limitations should bar all claims based upon alleged breaches that occurred on or before February 19, 2013 (three years prior to the filing of Plaintiffs' Complaint) because Plaintiffs had actual knowledge of the alleged breaches. To establish actual knowledge, Defendant cites to deposition testimony in which both Ford and Hempel acknowledge having occasionally received reports showing that ACE had withdrawn some funds for Plan administration expenses. (Ford. Dep. 12, 39, 48–49; Hempel Dep. 20–22.)

The Court finds Defendant has failed to carry her burden of showing actual knowledge. Defendant neglected to submit any reports that detail the Plan administration expense deductions allegedly disclosed to Plaintiffs. Further, Plaintiffs submitted declaration testimony stating that the correspondence received from ACE suggested only about $700 to $800 in annual administration fees. (Ford Decl. ¶ 20; Hempel Decl. ¶ 20; Doc. 30-25.) From the fact that Plaintiffs may have had knowledge of $700 to $800 a year in administration fees, it plainly does not follow that Plaintiffs were aware that ACE was actually withdrawing as much as $22,701 a month (Doc. 30-13, p. 83 of 84) under the guise of 'manager expenses."

Generally speaking, actual knowledge is not a requirement of the six year statute of repose. However, if a plaintiff shows that a fiduciary hid a breach through fraud or

concealment, the statute of repose is tolled until the plaintiff gains actual knowledge of the breach. *Moyles*, 263 F. Supp. 3d at 1011–12 (*citing* 29 U.S.C. § 1113). Plaintiff's argue that Defendant and Pete Cahn fraudulently concealed the actual amount they were withdrawing from the Plan by submitting invoices that grossly understated the actual amount being withdrawn for administrative expenses.

In support of this argument, Plaintiffs submitted evidence showing that, whereas ACE provided Plaintiffs with invoices indicating very modest annual administration fees (Doc. 30-25), Defendant and Pete Cahn were actually withdrawing substantially larger amounts than invoiced. (Docs. 30-12; 30-13.) The Court finds this evidence sufficient to trigger the fraud / concealment exception to 29 U.S.C. § 1113. Accordingly, the Statute of Repose is tolled until actual discovery of the breach. Plaintiffs testify that they did not discover the breach until after Pete Cahn's suicide in 2015. (Ford Decl. ¶ 24; Hempel Decl. ¶ 24.) Because Plaintiffs filed their complaint well within the six year period beginning in 2015, the statute of repose does not bar any of their claims.[3]

### C. <u>Individual Recovery</u>

Plaintiffs' complaint suggests that Plaintiffs may be seeking to personally recover from Defendant, as opposed to any recovery going only to the Plan, or going to all Plan Participants. (FAC Prayer ¶¶ 3, 4, 6.) Defendant contends that individualized recovery of ill-gotten profits is improper under ERISA. Defendant is correct. Under ERISA, Ill-gotten profits, obtained through a fiduciary's breach of duty, accrue directly to the plan or to ***all*** plan participants/beneficiaries by way of a constructive trust. *Massachusetts Mut. Life Ins. Co. v. Russel*, 473 U.S. 134, 144 (1985); *Amalgamated Clothing & Textile*

---

[3] This holding also applies to claims against Defendant in her personal capacity. Additionally, the evidence shows that Defendant was appointed to the Benefits Committee on April 26, 2001. (Doc. 29-3 Ex. I.) The appointing document indicates the appointment shall last until such time as a successor is appointed. (Id.) Because Defendant has submitted no subsequent appointing document showing that she was succeeded in her role as a member of the Benefits Committee, the Court finds that Defendant has failed to establish that she ceased her role as a fiduciary at any time prior to her late husband's death.

*Workers Union, AFL-CIO v. Murdock*, 861 F.2d 1406, 1414-15 (9th Cir. 1988) (citing 29 U.S.C. § 1109(a)). ERISA does not appear to provide for individual damages or a constructive trust that does not benefit all plan participants. *Id.* Accordingly, the Court **GRANTS** Defendant's motion for summary judgment as to Plaintiff's prayer for individual relief.

## IV. CONCLUSION & ORDER

For the foregoing reasons, Defendant's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART** as follows:

- All of Plaintiffs' claims may proceed.
- Plaintiffs are not entitled to individual relief.

Dated: April 25, 2018

_____
Hon. M. James Lorenz
United States District Judge